Betty L. KINCAID, Plaintiff-Appellee,

v.

Carlton Neal LYERLA and Murphy Motor Freight Lines, Inc., Defendants-Appellants.

Court of Appeals of Tennessee, Western Section, at Knoxville.

July 17, 1984.

Application for Permission to Appeal Denied Oct. 1, 1984.

Roger E. Jenne, Cleveland, for plaintiff-appellee.

Donald W. Strickland, Chattanooga, for defendants-appellants.

CRAWFORD, Judge.

Defendants, Carlton Neal Lyerla and Murphy Motor Freight Lines, Inc., appeal from a judgment on a jury verdict in the amount of $129,681.46 for plaintiff, Betty C. Kincaid.

The case arises out of a motor vehicle accident between a truck, owned by Murphy and driven by its employee Lyerla, and an automobile owned and driven by Kincaid. The issues presented for review by defendants do not require that we summarize the facts and details of the occurrence.

We will consider the issues presented for review by defendant in the order presented:

*Issue No. 1:* Whether the trial court erred in the admission of evidence by allowing to be read into evidence certain deposition testimony of Augusta H. Frye, Jr., M.D.

The medical testimony of Augusta H. Frye, Jr., M.D., was presented by deposition and over defendant's objection the court allowed the introduction of the following testimony by Dr. Frye.

Q. (By Mr. Jenne) What can be done, Dr. Frye, to stabilize her condition based on your findings of your cervical myelogram?

MR. STRICKLAND: Same objection.

A. Well, the thing that determines whether or not she has anything done is pain. If she has no pain, then there is no reason to do anything else to her. If she has pain of increasing intensity, then she will by all probability need some type of surgical procedure to remove the impingement on the nerve in the cervical spine.

If it is due to a ruptured disc, remove that and then do an autogenous bone graph to stabilize her neck where she has the disc removed from and this should stop her pain.

Q. Dr. Frye, do you have an indication, sir, or do you have an opinion as to what that surgery would cost?

\* \* \* \* \* \*

A. You are probably talking about anywhere from ten to twenty thousand dollars to get it done.

Defendants assert that the testimony of Dr. Frye quoted above amounts to conjecture, speculation or surmise, and that the future effect of the injury is not shown with a reasonable degree of medical certainty.

Plaintiff concedes that the opinion of an expert witness must be based upon a reasonable degree of medical certainty, and that a verdict cannot be based upon conjecture, speculation or surmise. Plaintiff asserts, however, that the testimony to which defendants object is taken out of context, and taken as a whole, the deposition provides testimony that is not based on speculation, and therefore the testimony is not objectionable.

We have reviewed the deposition and it indicates generally that the plaintiff had a pre-existing, arthritic condition which made her more susceptible to injury such as the one that occurred during the accident in this case. The deposition of this doctor was taken June 1, 1983 and completed on August 18, 1983, the trial was held August 23, 1983, and plaintiff was last seen by this doctor July 29, 1983. At the time she was last seen, she was improving, although she had some pain. Dr. Frye testified that based upon a reasonable degree of medical certainty, plaintiff, as a result of the accident, had a 30% disability to the body as a whole. However, the doctor stated that at the time of her last visit, no treatment was indicated for this lady, and any additional treatment will be determined by pain. Taking the medical testimony as a whole, it does appear that the testimony to which the defendants have objected is conjectural and does not rise to

a reasonable degree of medical certainty. The answer of Dr. Frye is premised entirely on another question, i.e., *if* she has pain. Thereafter, conjecture is based on conjecture for the treatment for the possible, future pain. Probably, the portion of the deposition that most clearly illustrates speculation is testimony of Dr. Frye that the future medical expenses would be "anywhere from $10,000 to $20,000." Obviously, this wide monetary range of medical expenses for proposed operations based upon possible augmentation of plaintiff's pain in the future is not based upon a reasonable degree of medical certainty, but is based upon speculation.

Plaintiff's attorney, in his final argument, stressed the future medical expenses, and illustrated the expenses on a chart used in argument. The diagram indicated future medical expenses of $10,000–$20,000 with an arbitrary figure of $15,000 asserted by plaintiff's attorney. The attorney, by averaging the two limits of the large range, demonstrates the speculative nature of the future medical expenses. Therefore, we find that the trial court, in admitting the above testimony over objection of defendant, committed error. We must now consider the effect of such error.

T.R.A.P. 36(b) provides:

Effect of Error.—A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

■ In this case, the plaintiff is a 50-year old woman, who was suffering from an arthritic condition prior to the accident. The medical expenses were in the neighborhood of $4,000, and she lost some wage earning ability. According to the medical evidence, the accident aggravated this pre-existing condition. The deposition of Dr. Frye indicates that approximately one year after the accident, she was not in sufficient pain from the accidental injury received to require medical treatment. This lack of sufficient pain indicates a rather minimal degree of impairment. However, Dr. Frye placed permanent partial disability of plaintiff at 30%, but Dr. Frye does not delineate the percentage he attributes to the pre-existing condition, and the percentage he attributes to the accident. Dr. Heywood testified that an aggravation of the pre-existing condition occurred and that the additional permanent partial disability resulting from the accident was between 5% and 10%. The record also reflects that the plaintiff was under the care and treatment of a physician for the arthritic condition, and had experienced pre-existing pain. Plaintiff would be able to recover in this case for the increase of her disability, but not for her total disability resulting from the pre-existing condition plus the aggravation of the condition caused by the accident. *See Haws v. Bullock*, 592 S.W.2d 588 (Tenn.App.1979).

■ As noted the jury returned a verdict for $129,681.46 after hearing arguments of counsel wherein the plaintiff's attorney argued the future effect of the injury and the future medical expenses premised upon the speculative testimony. Considering all of these facts and the whole record, we feel the erroneously admitted testimony more probably than not affected the verdict of the jury.

Accordingly, we reverse the judgment of the trial court and remand this case for a new trial.

Since we have reached this conclusion, we do not find it necessary to consider the other issues presented for review. Costs of the appeal are adjudged against the plaintiff.

TOMLIN and HIGHERS, JJ., concur.