# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
October 16, 2003 Session

## KENNETH RAY EMERT v. CITY OF KNOXVILLE

**Appeal from the Circuit Court for Knox County**
**No. 1-646-01     Dale C. Workman, Judge**

**<u>FILED NOVEMBER 20, 2003</u>**

**No. E2003-01081-COA-R3-CV**

---

The original plaintiff, since deceased, tripped on an uneven brick sidewalk and injured his right knee. He was blind, or nearly so, and used a walking aid. The defendant's negligence is not an issue on appeal. The issue is one of causation in light of the medical proof that the plaintiff suffered knee problems before the accident. The trial judge found that the accident aggravated the plaintiff's pre-existing condition and awarded damages of $100,000.00 with fault apportioned 80 percent to the defendant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed; Cause Remanded**

WILLIAM H. INMAN, SR.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Hillary B. Jones, Knoxville, for the Appellant, City of Knoxville.

John M. Norris, Strawberry Plains, for the Appellee, Estate of Kenneth Ray Emert.

**OPINION**

**I.**

On December 22, 2000, while walking on a brick sidewalk on the west side of Market Street in downtown Knoxville, Mr. Emert tripped over an uneven joint between the bricks. Because he was legally blind he was walking with the assistance of either a cane or crutches; he could not remember which. He sustained an injury to his right knee which required a total replacement on May 14, 2001 followed by a second replacement surgery on August 22, 2002.

This complaint was filed October 15, 2001, alleging that the defendant City owned and controlled the sidewalk and that it knew or should have known that on the date of the accident the sidewalk was in a defective or dangerous condition. This allegation was sustained and the defendant

does not controvert the finding of negligence. The defense centers on the admitted fact that Mr. Emert suffered from a pre-existing knee condition, and that at least 50 percent of fault for the accident should be apportioned to him.

Mr. Emert died November 29, 2002 and Mary Ann Manning, Executrix of his estate, was substituted as plaintiff. A bench trial was held on February 11, 2003. There were no live witnesses, and the proof consisted of Mr. Emert's deposition and medical records, the deposition of his treating physician Dr. Harold E. Cates, the deposition of City Engineer Robin Tipton, and the affidavit of David McGaha respecting the misaligned joints between the bricks. The court found that the City had constructive notice of the dangerous and defective condition of the sidewalk, and that its negligence was the proximate cause of Mr. Emert's fall and resulting injury to his right knee. Damages of $100,000.00 were assessed; fault was apportioned 80 percent to the City and 20 percent to Mr. Emert, resulting in a judgment for $80,000.00. The amount of the judgment is not an issue

## II.

The City appeals and presents for review the issues (1) of whether the evidence preponderates against the finding of causation, and (2) whether the fault of Mr. Emert was greater than 20 percent. The appellee presents for review the issue of whether any percentage of fault should have been apportioned to Mr. Emert.

## III.

Our review of factual findings is *de novo* on the record with a presumption that the findings are correct unless the preponderant evidence is otherwise. Rule 13(d) Tenn. R. App. P. The issue of causation, generally, is one of fact the resolution of which must be resolved by the trier of fact, here, the trial judge. ***Haynes v. Hamilton County***, 883 S.W.2d 606 (Tenn. 1994); ***Burgess v. Harley***, 934 S.W.2d 58 (Tenn. Ct. App. 1996). The issue of the apportionment of fault is one of fact to which the same standard of review is applicable. Rule 13(d) Tenn. R. App. P.

As we have noted, this case was tried entirely on documentation enabling this Court to arrive at its own conclusions as to the weight and credibility of depositional testimony since we are in the same position as the trial judge. ***Krick v. City of Lawrenceburg***, 945 S.W.2d 709 (Tenn. 1997); ***Orman v. Williams Sonoma Inc.***, 803 S.W.2d 672, (Tenn. 1991); ***State v. Binette,*** 33 S.W.3d 215 (Tenn. 2000). Consequently, the presumption of correctness of the factual findings of the trial judge is not applied with the same strictness as in cases where the trial judge has the opportunity to see and appraise the witnesses. ***Hohenberg Bros. Co. v. Missouri P. R. Co.***, 586 S.W.2d 117 (Tenn. Ct. App. 1979). Because the defendant City strenuously argues that the fall Mr. Emert suffered was not a cause of either of his right knee replacement surgeries, we have carefully reviewed the medical proof and reproduce it as pertinent to the issue of causation.

**IV.**
The Medical Proof

Dr. Harold E. Cates is a board certified orthopedic surgeon with twelve years experience. He first saw Mr. Emert on January 17, 2001 who was complaining of pain in his right knee, with considerable swelling accompanied by moderate arthritis. Diagnosis was knee fluid, the result of a fall, and indicative of inflamation. An MRI scan performed by another physician revealed a meniscus tear and Dr. Cates saw Mr. Emert a second time on March 28, 2001. At that time Mr. Emert was "limping and hurting", and taking narcotic pain medicines. Dr. Cates recommended knee replacement which was done May 14, 2001. The procedure was not successful. According to Dr. Cates, Mr. Emert "kept having falls, he kept having swelling in the knee that was huge. We ruled out infection, we ruled out instability . . . . He was bleeding inside the knee. He eventually underwent a revision of the knee by Dr. Christy in Nashville . . . . a revision specialist. I've not seen him since." Dr. Cates last saw Mr. Emert on August 16, 2002 when he removed 65 cc's of fluid from his knee, a procedure that he performed on Mr. Emert's right knee more than 20 times by a process of inserting a large needle in the knee joint and withdrawing the fluid.

When asked if he could say within a degree of medical certainty whether the fall Mr. Emert suffered exacerbated his pervious condition, Dr. Cates replied that "I do think the fall exacerbated his previous symptoms, yes." He also expressed the opinion that the fall was a causative or contributing factor in the surgery he performed in May 2001. He stated, *inter alia*, that ". . . . he had his knee surgery which would probably have been done in the future anyway, but it certainly led to him having it done sooner than it would have been otherwise."

Dr. Cates opined that it was not possible to state the time element with respect to the acceleration factor because "everybody's different" and "trauma can lead to changes that can lead you to have treatment sooner rather than later."

**V.**

It is not controverted that Mr. Emert had a long history of problems with his right knee. The appellant City argues that Mr. Emert had already scheduled an appointment for a right knee replacement before December 22, 2000, the date of his fall, and that it is illogical to attribute the fall as the cause of his replacement surgeries. In this connection we reference the trial court's finding of fact:

> . . . . The clear testimony is, prior to this fall, this fall being the fall of [sic] the city's sidewalk, this gentleman had a long history of knee problems, had had a total knee replacement on his left, faced the potential total knee replacement on his right, had seen the doctor, had a history of falling, whether that's from the knee conditions combined, or from other reasons, it doesn't matter. He had a long history of falls, repetitive falls. No question he had a torn meniscus,

which is a normal, common result from the underlying arthritic changes in his knee, that that existed prior to this fall.

There's no question he was at least looking at or there was consideration of immediate knee surgery. He had actually gone to Dr. Christy because Dr. Cates, and his partner, Dr. Naylor, considering the previous history of the left knee and the reconstruction, basically sent him to Dr. Christy to see if Dr. Christy would do a right knee replacement before this fall ever occurred. He's in the process of having - - it's going to be sooner rather than later. It's not a condition that might have been several years later. Obviously, he's looking at that immediately."

We would be less candid than the justice of the case requires us to be were we to accord this finding less significance than it portends, because it is a clear conspectus of the proof, except for the penultimate and ultimate sentences which are conclusary to some extent. Mr. Emert testified that he "was getting along" relatively good before he fell, and was close to putting his crutches aside. We note that the first surgery was not performed until May 14, 2001, more than five months after the accident which worsened the knee problem, and absent the exacerbation it is not conclusive under the proof when surgery would be necessitated, merely 'sooner or later' according to Dr. Cates.

The defendant City correctly argues that it cannot be held liable for Mr. Emert's pre-existing condition, and that a trier of fact must separate pre-existing injuries from the new injury and award damages only for the injury. ***Baxter v. Vandenheovel***, 686 S.W.2d 908, 912 (Tenn. Ct. App. 1985), ***Haws v. Bullock***, 592 S.W.2d 588 (Tenn. Ct. App. 1979). We think the trial judge recognized these legal principles, because he emphasized the exacerbation of the pre-existing problems by the fall which hastened the need for knee replacement surgery, and further recognition is inherent in the disallowance of medical expenses apportioned to the pre-existing condition. To adopt the City's argument would require a finding that the fall did not worsen Mr. Emert's problems with his right knee; and we cannot make this finding because it is well settled in this jurisdiction that the aggravation of a pre-existing condition is compensable. ***Haws***, *supra*, ***Baxter***, *supra*.

A tortfeasor is liable for all injuries proximately caused to a plaintiff. When the plaintiff has a pre-existing medical condition, "[t]he defendant is responsible for all ill effects which naturally and necessarily follow the injury in the condition of health in which the plaintiff was at the time of the [injury]." ***Elrod v. Town of Franklin***, 140 Tenn. 228, 240, 204 S.W.2d 298, 301 (1917). Thus, it has long been the law that a tortfeasor "must accept the injured person as he finds him," in that the tortfeasor is liable for the injury or harm actually caused by or which is the natural consequence of the tortfeasor's negligence whether the plaintiff was "weak or strong, healthy or sick" before the accident. *Id.*

-4-

. . . . A defendant is not liable for damages from an earlier condition or injury, not having cause those damages, except to the extent of aggravation or enhancement by the defendant's acts. Where possible, the fact finder must apportion the amount of disability and pain between that caused by the pre-existing condition and that caused by the accident. *Haws v. Bullock*, 592 S.W.2d at 591. A plaintiff can recover for an increase in disability resulting from an accident, but not for her total disability resulting from the pre-existing condition plus the aggravation caused by the accident. *Kincaid v. Lyerla*, 680 S.W.2d 471, 473 (Tenn. Ct. App. 1974).

In a similar vein, the defendant City argues that the trial judge inappropriately awarded damages for Mr. Emert's revised knee surgery because Dr. Cates testified there is "no direct relationship" between the fall and the second surgery. This testimony is essentially out of context; another statement by Dr. Cates is explanatory: ". . . the knee that was put in as a result of the flare didn't work, and the knee not working required revision." *See, Transports Inc. v. Perry*, 414 S.W.2d 1 (Tenn. 1967). We can find no reason to disturb the findings of the trial court and cannot say that the evidence preponderates against the finding of causation.

## VI.

The defendant City argues that even though the Market Street fall aggravated Mr. Emert's right knee problem, his estate should be barred from recovery because he was at least 50 percent at fault. We are again referred to comments by the trial judge that Mr. Emert was comparatively at fault because he was functionally blind, was addicted to narcotic medication, that "he himself affects his ability to see and perform," that he was familiar with the area where he fell and "should have had a heightened sense."

In *Eaton v. McLain*, 891 S.W.2d 587 (Tenn. 1994) the Supreme Court set forth the factors that should be considered when apportioning fault:

The percentage of fault assigned to each party should be dependent upon all the circumstances of the case, including such factors as: (1) the relative closeness of the causal relationship between the conduct of the defendant and the injury to the plaintiff; (2) the reasonableness of the party's conduct in confronting a risk, such as whether the party knew of the risk, or should have known of it; (3) the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff; (4) the existence of a sudden emergency requiring a hasty decision; (5) the significance of what the party was attempting to accomplish by the conduct, such as an

attempt to save another's life; and (6) the party's particular capacities, such as age, maturity, training, education, and so forth.

It is true that Mr. Emert had limited vision, but we cannot agree with the City's argument that he was "entirely unreasonable" in undertaking the risk of unassisted walking, because he had the right to assume the sidewalk was safe for passage. It is also true that Mr. Emert was unsteady and that he fell frequently; but there is no proof that his sometimes unsteadiness caused the Market Street fall. It is further true that Mr. Emert was using a walker or crutches while carrying a tote bag by means of a shoulder strap and a box of candy in a shopping bag. Again, there is no proof, except perhaps inferentially, that the tote bag or the shopping bag caused or contributed to his fall. With respect to the accusation that Mr. Emert was under the influence of a narcotic drug, as we read the record, it is silent on the subject of narcotic over-use in December 2000. His use of a narcotic drugs apparently commenced in 2001.

Again, we can find no expository reason to disturb the apportionment of fault, and the judgment is affirmed at the costs of the appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE