BLACK DIAMOND COLLIERIES *v.* JOHN GIBBS.

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

FRANTZ, McCONNELL & SEYMOUR and HOMER H. WALLACE, for plaintiff in error.

BEN F. ALEXANDER, for defendant in error.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The trial court found that Gibbs had sustained a fifty per cent permanent loss of the use of his right eye, and entered a decree in his favor for $9.24 per week for fifty weeks, less $9.24 which the Black Diamond Collieries had paid him for one week. If there is any evidence to sustain this finding, the decree must be affirmed.

It is conceded that Gibbs sustained an injury for which the employer is liable, and that the physician of the employer removed two foreign substances from his eye. The theory of Gibbs is that his sight in this eye is permanently impaired. The employer, Black Diamond Collieries, contends that his eye became normal three weeks subsequent to the injury. The case was tried two years after the accident.

Gibbs, after detailing the accident, his inability to work on account of his injured eye, and the treatments given him by two physicians, testified as follows:

"Q. What was the condition of the right eye before the injury occurred? A. I had a good eye, they all claimed. I was a good shot with a gun.

"Q. As a result of that injury are you suffering any disability in your eye at the present time? A. Once a month or something like once a month that eye will get

red, and if it ain't from the lump of coal it is in the sight of my eye. I don't know what causes it.

"Q. Can you see out of that eye as well as you could before the injury occurred? A. No sir.

"Q. About what per cent of disability do you consider you have in the sight of that eye?

"Mr. McConnell: We object to that question; counsel has asked the witness what percentage of loss of use he has in his eye. That is a medical matter and this man is not competent to express an opinion as to what the difference would be or as to what percentage of loss of use of vision there is if any.

"Mr. Alexander: I think he can tell how much his vision is impaired there.

"The Court: He might be as good authority on that as the doctor who examined him.

"Mr. McConnell: We note an exception.

"Mr. Alexander:

"Q. State how much you believe your eye is impaired?

"A. Well I claim my eye is destroyed fifty per cent of what it was, that is what I claim my eye is destroyed. There are times when I get hot that it gets that way and it will be that way for a week, but I can't hardly see to go around with it and I will just take my handkerchief and wipe at it and see if I can't wipe something away from it, but I can't."

██ If this testimony is competent then there is evidence to sustain the decree.

In 22 Corpus Juris, 527-528, it is said:

"Much effort is expended during the trial of causes to confine the testimony of witnesses to statements of what they saw, heard, or otherwise observed, as distinguished from the inferences or opinions formed as a result of such observation. The distinction is, however,

one which it is in many cases impossible to draw, for the reason that the most simple statement of fact involves an element of coordination, induction, or inference, the fact and the inference being frequently so blended that they cannot be separated. The modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions which are in many cases impracticable, and a witness is permitted to state a fact known to or observed by him, even though his statement involves a certain element of inference.''

In *Healy* v. *Visalia, etc., R. Co.*, 101 Cal., 585, the court said: .

''The border line between fact and opinion is often very indistinct, and the statement of a fact is frequently only an opinion of the witness. Impressions or sensations caused by external objects are not susceptible of exact reproduction or description in words, nor do they affect every individual alike, and the judgment or opinion of the witnesses by whom they have been experienced is the only mode by which they can be presented to a jury.''

In *Hays City First Nat. Bank* v. *Robinson*, 93 Kan., 464, it was said:

''Almost any answer might, when dissected with the scalpel of precise mental philosophy, be deemed wholly or partly a conclusion. The first stock question usually is, 'Where do you reside?' and the courts have not yet found that a reply giving the location indicates only the witness's conclusion as to his habitation, and yet no more perplexing question can arise than that of residence in some cases.''

Again, in 22 Corpus Juris, 559, it is said:

''The court, in discharging its administrative function of securing for the jury the best evidence fairly avail-

able, may well, where accurate measurements, weights, or other applications of standards to phenomena are available, reject the estimate of a witness in such matters. Nevertheless, from the nature of things, it is often absolutely necessary that a lower grade of evidence should be admissible, and accordingly the estimates of a witness are admitted in various connections."

As illustrations of this rule, we cite testimony of witnesses as to the speed of an automobile or a train, distances between given points, whether a person is intoxicated, etc.

Gibbs was testifying as to a fact peculiarly within his knowledge, a matter about which he was better qualified to speak than any other person. As pointed out in the authorities cited above, it is a statement of fact even though it may not be mathematically exact, just as one who testifies that an automobile was running at thirty miles per hour is only estimating the speed. In either case such testimony is subject to rebuttal, and such testimony was offered on the trial of this case. As a practical proposition, we are unable to see why one whose vision has been impaired by an accident is not qualified to testify as to the extent of the impairment. It is for the court to determine the weight to be given such testimony.

In *Diamond Coal Co.* v. *Jackson*, 156 Tenn., 183, the court said:

"It is further contended for the coal company that no evidence was offered on the trial to establish the extent of the loss of hearing which resulted from the loss of the use of a single ear.

"The only evidence directly bearing upon this question, which we find in the record, is the testimony of Jackson

himself, to the effect that his injury had affected his hearing 'about fifty per cent.' Some objection was offered to the questions which drew this answer from the witness, but the objections were overruled and the ruling of the trial judge has not been assigned for error.

"The extent of the disability resulting from an injury is ordinarily a question of fact, and the testimony of the witness just referred to, in connection with the finding that there was a total loss of use of one ear, amounts to some evidence in support of the finding of the trial court."

The trial court, after hearing all of the evidence, was of the opinion that Gibbs' eye had been permanently impaired fifty per cent, and finding some evidence to support his conclusion, it results that his decree will be affirmed.