The Fidelity and Casualty Company of New York, Respondent,

*v.*

William H. Treadwell, Petitioner.

367 S. W. 2d 470.

(*Jackson,* April Term, 1963).

Opinion filed May 10, 1963.

CURRIE DRAKE, Milan, for petitioner.

ROBERT P. ADAMS, Trenton, LLOYD S. ADAMS, JR., Humboldt, for respondent.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This is a Workmen's Compensation case. The trial judge found that the injured employee sustained permanent partial disability as provided by sec. 50-1007(c), T.C.A., in the amount of seventy-five (75%) per cent, to the body as a whole. He also found that the employee

was entitled to recover $167.78 expended for drugs and medicine purchased to relieve himself of his injuries. The employer has seasonably appealed to this Court.

The employee, fifty-six (56) years old, uneducated, and a laborer, was injured in a fall in July, 1960, while employed by the Public Utilities Department of the City of Milan, Tennessee. He was paid temporary total disability for a period of forty-seven weeks at the rate of $26.00 a week (based on an average weekly wage of $40.00). All medical expenses up to the time of the trial had been paid by the employer, or its insurance carrier, except the sum of $167.78.

The employee claimed in his petition, and so testified at the hearing, that he was totally and permanently disabled from doing work as a laborer. The principal question involved in this lawsuit is the extent of the disability. As a result of this fall of ten or fifteen feet from a scaffold he suffered a broken nose, a fracture of the foot, multiple abrasions and contusions, and injured his lower back. Prior to this accident and injury the man had some amount of arthritis in his dorsal and lumbar spine and as to whether or not this fall aggravated this preexisting condition resulting in an inability to perform heavy manual labor, which he did for a living, is the determinative question here.

The case of *Gulch Lumber Co. v. Fields,* 193 Tenn. 365, 246 S.W.2d 47, is factually, as to recovery for a condition of this kind, almost identical with the case here involved.

As said above the employee testified that he couldn't do anything now as a result of this fall and that he had tried to get work to do to make a living but couldn't find anything. A local physician, a Dr. Jones, at Milan testi-

fied very positively that in his opinion this fall aggravated this arthritic condition, and that in his opinion the man was one hundred (100%) per cent disabled as a result of this fall aggravating this arthritic condition. This doctor though in an effort to either back up his conclusion or to see whether or not he was, as he expressed it, wrong in it, had various and sundry pathological examinations, x-rays, etc., made by others in the Milan hospital and in the hospital at Jackson and statements sent to him either by letter or over the phone which, he says, supported his conclusion. One of the questions presented in this lawsuit is whether or not this doctor can base an opinion on these statements which were not introduced in evidence but merely were his statements that these examinations supported his conclusion. There will be more on this technical question hereinafter.

The trial judge primarily based his conclusion upon the testimony of a Dr. Smith, even though he did consider the testimony of Dr. Jones. The testimony of Dr. Smith is not in any way involved in the question of pathological or x-ray examinations made by others, but is arrived at from his own examination, considering the man, what he did, and his capacity to do other work than manual labor. Dr. Smith among other things said: "Yes, if it involves that type of labor, I think he is unable to do it. He has enough arthritis alone in his back that he should not do that, and then he has the added disability from the injuries. As I said earlier, it is the cup of water that makes the bucket run over." This answer of the doctor is to a question, "* * * isn't it a fact, for hard manual labor, he is totally unable to do that at this time where he has to do any bending or lifting or stooping?" This doctor

concludes that the man has approximately a fifteen (15%) per cent capacity of a comparable man and that he has another five (5%) per cent disability from an anatomical viewpoint. Anatomical, as thus used, is "pertaining to the structure of the body." This testimony of Dr. Smith is somewhat explained in this way.

"Q  Is he able to do hard manual labor at this time, doctor?

"A  Well, certain things, yes, and some things, no. Now I am getting out in the field where laymen will have to decide this, and I would rather restrict my estimate of disability to the anatomic loss and let you gentlemen decide how that affects him from a work standpoint."

Of course, other doctors, men very able in their field, contradict much of this testimony, and it is on this contradiction and the statement of this Dr. Smith that the man is only five (5%) per cent disabled anatomically that this appeal is primarily based. We have though the trial judge who sees the injured man before him, hears his testimony and has all of this evidence pro and con before him and then arrives at the conclusion which he did as set out in the outset of this opinion. Under such circumstances, that is the finding of this fact by the trial court, it will not and cannot be disturbed on appeal by us where it is supported by any material evidence as such a finding is supported here. For a list of fifty or more cases bearing out this proposition see sec. 50-1018, T.C.A., note 39, page 370 of Volume 9. There have been literally dozens and more such statements. By the very Act itself, and by judicial construction since the Act was passed in 1919, this is a well settled rule of law in this State.

As to this testimony of the man himself he stated that he was totally disabled from doing manual labor (he was a big man of only a fourth grade education, had been a farmer and doing manual labor of digging ditches, etc., at the time of this accident). Let us go back thirty odd years to *Black Diamond Collieries v. Gibbs,* 161 Tenn. 413, 32 S.W.2d 1041, wherein this Court affirmed the trial court in finding a fifty per cent disability due to the loss of an eye which was based entirely upon the testimony of the man himself that he had fifty per cent disability on account of the loss of this eye. This Court in that case said this statement is a statement of fact peculiarly within the knowledge of the man, even though it may not be mathematically exact, just as one would testify that an automobile was running thirty (30) miles an hour or such a thing. Such testimony is for the trier of facts to determine as to the amount of this disability, and it is not for this Court to determine the weight to be given such testimony.

"The trial court, after hearing all of the evidence, was of the opinion that Gibbs' eye had been permanently impaired 50 per cent., and, finding some evidence to support his conclusion, it results that his decree will be affirmed."

The degree of disability is purely a question of fact, and the findings of the trial judge is conclusive on appeal, where such finding is supported by any material testimony. *Key v. Briar Hill Collieries,* 167 Tenn. 229, 68 S.W.2d 115; *United States Rubber Products Co. v. Cannon,* 172 Tenn. 665, 113 S.W.2d 1184; and many many other cases that can be found over the years supporting this statement. This rule has never been changed in Tennessee.

8

A very able argument was made at the bar of this Court, and is made in the very excellent brief of the appellant, that certain doctors who testified herein are entitled to far more weight and that their findings should be accepted rather than the findings that were accepted by the trial judge. The trial judge is not bound to accept a doctor's testimony that the claimant could return to work, but it is up to him to determine from all the evidence, expert and non-expert, the extent of the disability. *Bush Bros. & Co. v. Williams*, 197 Tenn. 334, 273 S.W. 2d 137. We, in *General Shale Products Corp. v. Casey*, 202 Tenn. 219, 303 S.W.2d 736, adopted and quoted from a Kansas case of *Richards v. J-M Service Corp.*, 164 Kan. 316, 188 P.2d 939, 943, the following, which certainly applies to Workmen's Compensation cases in this State. We quoted this:

"If one qualified doctor testifies that an accident caused or aggravated a condition resuling in disability and the trial court sees fit to base a finding of fact upon such testimony, this court cannot change or disregard the finding even though ten or more other qualified doctors may have testified to the contrary. The final responsibility for reaching proper findings of fact in workmen's compensation cases, as in many others, rests upon the district courts. Such courts from the examination of transcripts should carefully consider the weight and preponderance of conflicting medical and other evidence, the reflected ability and integrity of witnesses, and reach results which will cast credit upon the impartiality and rectitude of judicial tribunals because this court cannot consider such elements in an effort to perpetuate the high respect and

esteem for courts which should follow from the exercise of the responsibility.''

We have, and it is our duty under this Act, more or less over the years followed the reasoning of the Court of Appeals of Georgia in *Atlantic Steel Co. v. McLarty*, 74 Ga.App. 300, 39 S.E.2d 733, 735, to the effect that: ''* * * the testimony of an injured person as to the extent of his injuries may be believed in preference to the opinions of 'a whole college of physicians' testifying to the contrary.''

The reasons for this rule are stated by Larson, Vol. 2, of his excellent work, at page 302, thus:

''* * * the first is that lay testimony, including that of claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, the sequence of events leading to the compensable condition, and the actual ability or inability of claimant to perform his work; the second is that industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, disability, malingering and the like.''

This same line of reasoning goes back to one of our earliest reported cases on compensation, that of *Ezell v. Tipton*, 150 Tenn. 300, 264 S.W. 355, and many, many others that may be found by Shepardizing or studying the matter carefully. Twenty years ago the late Chief Justice Green reviewed many of these cases and held in *Crane Enamelware Co. v. Crawley*, 180 Tenn. 272, 174 S.W.2d 458, that the testimony of the claimant, of his doctor, and observation of the trial judge was substantial evidence and sufficient to sustain a compensation award

for permanent partial disability based upon the ten
(10%) per cent loss of the use of a leg.

We, in *Swift & Co. v. Howard,* 186 Tenn. 584,
212 S.W.2d 388, 391, attempted to focalize and crystalize
the law in this State that where an employee, even though
he is suffering from an injury when he goes to work, and
is injured and suffers an aggravation of the existing in-
jury that he had while he was working that it is com-
pensable, when we said:

"When an employer employs a workman he takes
him as he is and assumes the risk of having a weakened
condition aggravated by some injury which might not
hurt or bother a perfectly normal, healthy person. If
the injury is the proximate cause of the disability, i.e.,
excites and aggravates a previous weakened condition
then the employer is liable."

There are a number of cases cited to support this con-
clusion, and it is now settled law in this State. We con-
clude from what has been said above after carefully
reading this record that there is material support for the
trial judge's finding that the petitioner's disability re-
sulted from an aggravation and an increase of an arthritic
condition which was caused by an accidental injury aris-
ing out of and in the course of his employment; on
account of which an award of compensation was proper.

Before we get to the question of interest, and a
new question as far as we are advised in this State, an
objection is made to the allowance of the $167.78 for
medical expenses in addition to what the employer's in-
surance carrier has already paid. We find in the record
proof from statements of Dr. Jones and other proof that
this amount of $167.78 was prescribed and used by this

man as a result of his injuries and thus the allowance for this to the employee was a proper allowance insofar as it doesn't exceed the statutory maximum.

The interesting question raised by this lawsuit, and both sides request that we answer, is stated thus by question 127 on page 83 of the record, which is:

"If the Court please, our objection is in the record to the opinion of Dr. Jones, based upon information that is hearsay and outside the record. I want to make it plain that we have excepted and moved to strike his testimony based on an opinion as to what others have told him."

██ ██ This objection was overruled. There are various and sundry comments made in the record where such an objection was made. These objections come about by reason of the fact that Dr. Jones, after stating that he concluded that this man was totally disabled by reason of the aggravation of this arthritic condition, then to support this conclusion had these x-rays, blood tests, and pathological examinations made by the hospitals in Jackson and Milan and other doctors, and he then concludes that from such that his conclusion was correct. As a matter of fact his conclusion was formed before he had such x-rays, pathological tests, etc., made, and thus his conclusion is not based upon them and therefore any conclusion which he had would not be reversible error. At most such conclusion would be harmless error. In *Gulch Lumber Co. v. Fields,* supra, we discussed the question of medical expert testimony based upon subjective and objective questions. In that case we discussed the case relied on here by appellant of *Baxter v. Jordan,* 158 Tenn. 471, 14 S.W.2d 717. We concluded that when hearsay

evidence of this type, which was objected to, does creep into these compensation trials that common sense only dictates that we should give the trial judge large latitude and discretion as to whether or not such is admissible. We said though that "if the finding of the trial judge was based on this hearsay evidence the case should be reversed. An injured employee must prove his case like any other lawsuit is proven. When though hearsay evidence of the kind here creeps in but the finding of the trial judge is based on competent legal evidence then the mere fact that such hearsay evidence has crept into the trial should not be reversible error." The same can be said for what has happened in this case. The question is annotated in 175 A.L.R., beginning at 274 and particularly at 285, under sec. 5 of the annotation. The general rule is that testimony of medical experts based upon information obtained from blood tests, x-ray tests, etc., not offered in evidence and made by third parties not appearing as witnesses, has been considered inadmissible. Examination of this note and some of the cases which we have read though brings us to the conclusion that the technical rule is subject to many fluctuations depending entirely upon how the case was tried and conducted. One very interesting case cited therein was that of *Sundquist v. Madison R. Co.*, 197 Wis. 83, 221 N.W. 392, 28 NCCA, 169. It is very enlightening and stated probably the common sense way that such testimony should be looked at. This was apparently the view that the trial judge adopted below. The ruling though on this question, as said above, does not affect the results of the present trial because the finding of the trial judge and the finding of the doctor, to whose testimony this objection was made, was not based on his conclusions as arrived at from this testi-

mony not technically introduced in evidence, but he had already formed his conclusion, and these things were done to back up such a conclusion. Thus it is that we think there is no error on this point in this record. In the Wisconsin case the court made this very apt remark: ''This court has held that it will not close the doors of the courts to the light which is given by a diagnosis which all the rest of the world accepts and acts upon, even if the diagnosis is in part based upon facts which are not established by the sworn testimony in the case to be true.''

.We have carefully considered every assignment and for the reasons hereinabove set forth hold that the judgment below must be affirmed.