A. C. LAWRENCE LEATHER COMPANY, Appellant,

*v.*

WINSTON LOVEDAY, Appellee.

455 S.W.2d 141

(*Knoxville*, September Term, 1969.)

Opinion filed May 18, 1970.

318

ERMA G. GREENWOOD, Knoxville, for appellant.

JOHN C. PORTER, Newport, for appellee.

MR. SPECIAL JUSTICE ERBY L. JENKINS delivered the opinion of the Court.

This workmen's compensation case was brought in the Circuit Court of Cocke County. The trial judge granted the petitioner-employee, Winston Loveday, benefits for temporary total disability of $42.00 per week from October 7, 1968, to March 21, 1969, the date of the hearing,

together with medical and hospital costs. It was further ordered that the defendant pay petitioner weekly benefits for so long as he was totally disabled from performing any work from which he could earn an income and for any residual disability to which he might be entitled; and the case was retained on the docket for future consideration.

On May 18, 1969, the petitioner filed his supplemental bill, and a further hearing was had on July 1st. The trial judge affirmed his prior opinion and gave an additional award of temporary total disability benefits from March 21, 1969, to April 1, 1969. Additionally, he found that the petitioner had a sixty (60%) percent permanent partial disability to the body as a whole, for which he awarded benefits from April 1, 1969. Defendants have appealed and assigned three assignments of error.

The record shows that on and prior to October 7, 1968, the day of the alleged accident, Loveday was employed by the defendant. He is an uneducated man, having a fifth grade education and is classified on the labor market as a common laborer.

On October 7, 1968, the employee was working in a ditch using a heavy pick. He testified that he "just started to hurting" while digging; that he told the foreman he had hurt his back, saying "my back is killing me," and the foreman acknowledged his complaint by saying "you'll just have to sleep on your side of the bed tonight." Loveday worked the remainder of the day, but with considerable difficulty. That night, on going home to the wife of his bosom, and remembering the admonition of his foreman, in his simple but all expressive manner, Loveday said "My back's killing me." She was compas-

sionate and understood. He was unable to arise from the connubial couch the next morning without the aid of his companion, and following his foreman's suggestion, Loveday went to the hospital where he was under the care of Dr. Glenn Schultz for four days. After his discharge he continued to complain of back trouble. Dr. Schultz referred Loveday to an outstanding orthopedic surgeon who examined him and suggested that he return to work, and let his back hurt. This advice, like sulphur and molasses, is easier prescribed than taken. Loveday returned to work on November 12, 1968, worked approximately three hours and went home.

Loveday had a family to support and, out of necessity, approximately three weeks prior to the March 21st hearing, he acquired a job at a service station, where he continued to work until June 1, 1969. His duties involved pumping gas and greasing cars, for which he was paid $35.00 per week. He worked seven nights a week, about six hours per night. Loveday testified that his back had been hurting ever since he started to work; and that he could not do any kind of manual labor without much pain and suffering.

The appellant-employer asserts three assignments of error:

1. There is no evidence to support the trial court's finding that the employee suffered an accidental injury arising out of and in the course of his employment.

2. There is no evidence to support the trial court's finding that the employee was temporarily totally disabled from October 8, 1968, to April 1, 1969.

3. There is no evidence to support the trial court's finding that the employee suffered a sixty (60%) percent permanent partial disability to the body as a whole.

■ In order to successfully pursue a claim for workmen's compensation benefits a petitioner must show, among other things, that he suffered an "injury by accident." T.C.A. Section 50-902 (d). There is no disputing the fact that Loveday suffered an injury. However, it is the employer's earnest contention that there is no evidence of an "accident."

■■ An accidental injury is one which cannot be reasonably anticipated, is unexpected and is precipitated by unusual combinations of fortuitous circumstances. *Kroger Company v. Johnson* (1967), 221 Tenn. 649, 430 S.W.2d 130; *Brown Shoe Company v. Reed* (1961), 209 Tenn. 106, 350 S.W.2d 65. Even if the usual strain or exertion of work produces an unusual result, the resulting injury is by accident. *Huey Brothers Lumber Co. v. Kirk* (1962), 210 Tenn. 170, 357 S.W.2d 50; *Nashville Pure Milk Company v. Rychen* (1958), 204 Tenn. 575, 322 S.W.2d 432.

The testimony shows that in the morning of October 7th the employee was digging a ditch about one foot in depth, but had to remove himself therefrom when it became flooded with hot water. He was forced to stand at ground level in an awkward position in order to continue his digging. When asked if he knew the moment he hurt his back, Loveday responded: "Yeah, it was about 9:00 o'clock when I hurt my back, * * * well, I just started to hurting, I mean when I was digging. I told him (the foreman), I hurt my back, * * * and I said 'my back's killing me.' "

■ From all the evidence adduced in the present case, we think it can fairly be said that there is material evidence to support a finding that Loveday suffered an "accidental" injury. The employee was engaged in the ordinary activity of digging a ditch when his back started hurting, as he said, "killing me." This fact was related to the foreman and was acknowledged as aforesaid. What more forceful notice could have been given the foreman by the employee who was digging with a pick in an awkward position then "my back is killing me." It is a mountain expression for pain, head, back or feet, that has been used so long that the mind of man runneth not to the contrary. To the sophisticated, he was saying "Sir, I have hurt my back and I am suffering the most excruciating physical pain." And what more eloquent acknowledgment could have been given by the foreman that the employee had sustained an injury to his back than to make that reply, so often used in the mountains, "you'll just have to sleep on your side of the bed tonight."

The only reasonable conclusion to be drawn from the evidence is that the usual strain of ditch digging produced the unexpected result experienced by the employee in the instant case.

■ The second assignment of error questions the trial judge's finding that the employee was temporarily totally disabled from October 8, 1968, to April 1, 1969. Since the extent of disability in a compensation case is a question of fact, if the trial court's findings are supported by any material evidence they are conclusive upon this Court. *Armstrong v. Spears* (1965), 216 Tenn. 643, 393 S.W.2d 729; *Fidelity & Casualty Co. v. Treadwell* (1963), 212 Tenn. 1, 367 S.W.2d 470.

The evidence concerning the extent of Loveday's temporary disability consists of Loveday's testimony, the testimony of Dr. Schultz and a report by an outstanding orthopedic surgeon. Loveday testified that his pain never ceased since the time he was hurt; that he attempted to return to work on November 11th, but the pain was so bad he could work only three hours; that he cannot bend over without his back hurting; and that he cannot perform any kind of manual labor without a lot of pain and suffering. Dr. Schultz testified that he advised Loveday to return to work on November 11th, but that he came back the succeeding day with complaints of back pain; that the ex-rays taken were negative. However, Dr. Schultz did state that he had ''to go according to a man's complaints, and according to his (Loveday's) complaints he is not able to work.'' The orthopedist was of the opinion that Loveday could return to work on November 4th.

■ In *Gluck Brothers, Inc. v. Coffey* (1968) 222 Tenn. 6, 431 S.W.2d 756, this Court ruled that even though the employee's unsupported testimony may be made the basis of an award of permanent partial disability, it cannot be made the basis for a more or less indefinite award of temporary total disability. The Court felt that the employee's testimony was not accepted at face value by the trial judge; for if it had been so accepted, he would have had to order a continuation of temporary total disability benefits or have ordered permanent total. Instead, he terminated the benefits for temporary total as of the date his order was entered.

■ The ruling in Gluck Brothers, supra, certainly has no applicability to the present case. Here, there is evidence as to the extent of Loveday's disability other than

the testimony of Loveday himself. Dr. Schultz unequivocally stated that Loveday was not able to work. Thus, the material evidence rule is satisfied and we are bound by the trial judge's findings regarding temporary total disability benefits.

■ We do feel, however, that the trial judge was in error in awarding benefits for temporary total disability up to the period of April 1, 1969. "The period of temporary total disability is * * * the time during which the workman is wholly disabled and unable by reason of his injury to work." *Redmond v. McMinn County* (1962), 209 Tenn. 463, 354 S.W.2d 435. Even though it was an economic necessity of Loveday to work in order to support his family and although he was in pain while working, nevertheless, when he did start working he could no longer be considered "wholly disabled." Thus, the trial judge erred in awarding Loveday benefits for temporary total disability during this period in which he was working. The benefits should have terminated on or about March 1, 1969.

The third and final assignment of error is that there is no evidence to support the trial judge's finding of sixty (60%) percent permanent partial disability.

The employee testified that he could not do any kind of manual labor without a lot of pain and suffering; and that he could not do "a half a man's work" since he hurt his back. Dr. Schultz testified that according to Loveday's complaints, he was not able to work; that Loveday "isn't the nervous type that runs in the office." The orthopedist's records reveal that he found no evidence of residual disability attributable to Loveday's

injury of October 7, 1968, and that he could perform regular work.

■ The trial judge was not bound to accept the doctors' opinions concerning the extent of the disability, but was entitled to determine from all the evidence, expert and nonexpert, the degree thereof. *Fidelity & Casualty Co. of New York v. Treadwell,* supra; *Bush Bros. & Company v. Williams* (1954), 197 Tenn. 334, 273 S.W.2d 137.

In regard to predicating an award upon the testimony of the injured employee concerning the extent of his disability, this Court said in *Fidelity & Casualty Co. of New York v. Treadwell,* supra:

"As to this testimony of the man himself he stated that he was totally disabled from doing manual labor * * * Let us go back thirty odd years to *Black Diamond Collieries v. Gibbs,* 161 Tenn. 413, 32 S.W.2d 1041, wherein this Court affirmed the trial court in finding a fifty per cent disability due to the loss of an eye which was based entirely upon the testimony of the man himself that he had fifty per cent disability on account of the loss of this eye. * * * Such testimony is for the trier of facts to determine as to the amount of this disability, and it is not for this Court to determine the weight to be given such testimony.

\* \* \* \* \* \* \*

"We have * * * over the years followed the reasoning of * * * *Atlantic Steel Co. v. McLarty,* 74 Ga.App. 300, 39 S.E.2d 733, 735, to the effect that: '* * * the testimony of an injured person as to the extent of his injuries may be believed in preference to the opinions of 'a whole college of physicians' testifying to the contrary,' "

Accordingly, we think there is material evidence to support the findings of the trial judge, for as stated, in addition to the worker himself, Dr. Schultz testified that, in effect Loveday was not malingering and that if he said that he was unable to work and was in pain, he believed him. We must bear in mind that Dr. Schultz was the worker's family doctor. The trial courts, in cases of this nature, do and should, give great weight to the testimony of the family doctor. He ordinarily is not prejudiced for or against the patient. He is usually intimately acquainted with the patient, and knows his history, his complaints, his tendency to exaggerate or to minimize his aches and pains. The family doctor is not only a doctor, he is an adviser, a psychoanalyst, a psychiatrist and a physiologist, all wrapped up in one. He knows the patients who are sick when they claim to be sick and heeds their call. Healing the sick is his profession. He does not take in swearing for a living. Unfortunately the family doctors are becoming too few, and the medical profession and society as a whole are the poorer for it.

Taking into consideration the testimony of the worker himself, Dr. Schultz, the family doctor, we feel that there is material evidence to sustain the findings of the trial court and the assignments of error are overruled and the judgment below will be modified so as to award Loveday permanent partial disability for 240 weeks, dating from March 1, 1969, rather than April 1, 1969.

DYER, CHIEF JUSTICE, and CRESON, HUMPHREYS, and McCANLESS, JUSTICES, concur.