# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 7, 2004 Session

## DOMINIC P. PELLICANO v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 00C-3678    Carol Solomon, Judge**

---

**No. M2003-00292-COA-R3-CV - Filed February 23, 2004**

---

Plaintiff, who had a pre-existing herniated disk, was rear-ended in a vehicular accident seven weeks after the first injury.  A diskectomy was performed six months later.  Treating physician equivocated when asked whether the diskectomy was necessitated by the second injury, testifying, "maybe yes; maybe no."  Trial court found that Plaintiff's need for surgery was caused by incident and awarded Plaintiff judgment against Defendant for all medical expenses related to the surgery, lost wages and pain and suffering.  Plaintiff did not present sufficient proof to establish that incident was cause in fact of need for surgery for physician could not state with reasonable degree of medical certainty that need for surgery was the result of the incident.  Further, lay testimony of Plaintiff and Plaintiff's brother was insufficient to prove cause in fact of Plaintiff's need for surgery.  Accordingly, we reverse the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Modified and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Lora A. Barkenbus, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville and Davidson County.

Robert H. Plummer, Jr., Franklin, Tennessee, for the appellee, Dominic P. Pellicano.

### OPINION

The issue is whether the plaintiff, who suffered from a pre-existing herniated disk, presented sufficient proof to establish that the incident with the defendant's ambulance was the cause in fact for surgery to repair the herniated disk and 100% of the resulting medical expenses, lost wages and pain and suffering.

Plaintiff/Appellee, Dominic Pellicano (Pellicano) was involved in an on-the-job accident on November 2, 1999 while working for A-H Mechanical Contractors, Inc., when a one hundred pound pipe fell on his neck and shoulder. Pellicano sought medical care, and X-rays were taken which revealed a herniated disk. Pellicano filed a workers' compensation claim and alleged that he sustained the herniated disk as a result of the November 2, 1999 on-the-job injury. His employer and workers' compensation carrier contested the claim.[1]

Seven weeks later, on December 27, 1999, Pellicano was involved in a "rear-end" incident in which his vehicle was struck from behind by a Nashville Fire Department ambulance. The ambulance was driven by William Jones. Ricky Wilson, a paramedic, was in the rear of the ambulance treating two patients. The ambulance was moving slowly in bumper-to-bumper traffic, at approximately five (5) miles per hour. Jones attempted to stop the ambulance slowly so as not to throw the patients and Wilson around in the back of the ambulance; however, he was unable to stop before hitting Pellicano's vehicle from the rear. Wilson, who was standing in the rear of the ambulance when the wreck occurred, testified that the incident was so subtle that he was not knocked off his feet. Jones and Wilson spoke to Pellicano immediately after the accident. Pellicano stated to them that he was not hurt and did not need nor desire medical care. No one in the ambulance sustained any injuries as a result of the incident.

Following the incident at issue, Pellicano continued to work and did not seek medical care until four months later. Pellicano first sought medical care for injuries related to the rear-end incident on May 4, 2000; however, he did not return to the doctor who treated him for the on-the-job injury. Instead, Pellicano went to Dr. John P. Guillermin. Following a brief period of conservative treatment, Dr. Guillermin recommended surgery to repair Pellicano's herniated disk. The surgery was performed on June 19, 2000. After surgery, Pellicano remained off work until September 18, 2000 when he was released to return to work. Pellicano has not received any medical treatment since the surgery.

Pellicano filed this personal injury action against the Metropolitan Government of Nashville and Davidson County, Tennessee (Defendant), the Nashville Fire Department and William R. Jones, the ambulance driver. By agreed order, William Jones and the Nashville Fire Department were dismissed from the lawsuit.

The case was tried without a jury. Witnesses at trial included Pellicano; his brother, Peter Pellicano; the ambulance driver, William Jones; and the other paramedic in the ambulance, Ricky Wilson. The testimony of Dr. Guillermin, Pellicano's treating physician, was presented through his deposition.[2]

---

[1] A workers' compensation action, Davidson County Circuit Court Docket No. 00C-2706, was filed by Dominic Pellicano against A-H Mechanical Contractors, Inc. The record does not indicate whether Pellicano received any recovery from that action.

[2] Dr. Guillermin performed the diskectomy.

The trial court held that Pellicano's pre-existing neck injury was exacerbated by the incident and that the incident was the sole cause in fact for Pellicano's need for a diskectomy. Defendant was held liable for 100% of the medical expenses related to the surgery, plus lost wages and pain and suffering. Specifically, Pellicano was awarded $41,580 for medical bills, $5,500 for lost wages and $45,000 for pain and suffering for a total award of $92,080. The trial court did not allocate any of Pellicano's damages to the pre-existing injury or to Pellicano's employer.

Standard of Review

An appellate court's review of a trial court's findings of fact is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Unless there is an error of law, we must affirm the trial court's decision as long as the evidence does not preponderate against the findings. *Umstot v. Umstot*, 968 S.W.2d 819, 821 (Tenn. Ct. App. 1997).

The weight, faith and credit to be given to a witness' testimony lies with the trial judge in a non-jury case because the trial judge had an opportunity to observe the manner and demeanor of the witness during their testimony. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991); *Weaver v. Nelms*, 750 S.W.2d 158, 160 (Tenn. Ct. App. 1987). In reviewing documentary proof such as deposition testimony which was presented to the trial court, "all impressions of weight and credibility are drawn from the contents of the evidence, and not from the appearance of witnesses and oral testimony at trial." *Wells v. Tennessee Board of Regents*, 9 S.W.3d 779, 783-784 (Tenn. 1999). An appellate court "may make an independent assessment of the credibility of the documentary proof it reviews without affording deference to the trial court's findings." *Id*. at 783. When the proof is presented through a deposition, the appellate court can just as well judge the credibility of the witness as the trial court. *Id.* 784. There is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996) and Tenn. R. App. P. 13(d).

Analysis

The defendant contends that it is not responsible for 100% of Pellicano's injuries and resulting damages because Pellicano had a pre-existing herniated disk; emphasizing the fact that the pre-existing injury occurred a mere seven weeks prior to the incident at issue. Moreover, Defendant contends that while the incident may have exacerbated a pre-existing injury, the court should have apportioned the damages because the proof was insufficient to establish that the incident was the sole and proximate cause of Pellicano's need for the diskectomy. Defendant therefore concludes that the proof was insufficient to hold Defendant liable for all expenses related to the surgery, lost wages resulting from the surgery, and pain and suffering related to the surgery and recovery from surgery.

A cause of action for negligence requires that five elements be established : (1) a duty of care owed by the defendant to the plaintiff; (2) conduct that falls below the applicable standard of care such that there is a breach of the duty of care; (3) an injury or loss; (4) causation in fact; (5) and

proximate or legal cause. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). In this case Defendant concedes that it is responsible for exacerbating Pellicano's condition; thus, we need not address the first three elements and begin our inquiry with a focus on the fourth element, causation, to determine if the incident was the cause in fact for Pellicano's surgery. "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). In situations where two independent causes are present which alone could have produced the injury, the "but for" test may not be as effective and the court may consider whether the defendant's conduct was a "substantial factor" in bringing about the harm. *Waste Management, Inc. of Tennessee v. South Central Bell Telephone Company*, 15 S.W.3d 425, 431 (Tenn. Ct. App. 1997). The plaintiff has the "burden of introducing evidence that affords a reasonable basis for concluding that it is more likely than not that the defendant's conduct was a cause in fact of their injury." *Waste Management* at 433 (citing *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 939 (Tenn. 1994).

The issue of causation in fact should be resolved before undertaking the issues of legal cause or allocating fault. *Waste Management* at 433. "Once it is established that the defendant's negligent conduct was, in point of fact, the actual cause of the plaintiff's injury or harm, the focus then becomes whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred." *Kilpatrick* at 598. Thus, we must first find that the incident was the cause in fact for the surgery as opposed to an injury to a lesser extent before considering whether the final element, that of proximate cause, has been satisfied.

Pellicano insists that his injuries, specifically the need for surgery, resulted from the incident with Defendant's ambulance, not the prior injury. He testified that the prior injury was not causing him any pain at the time of the incident with the ambulance, and that he was successfully recovering from the prior injury, though he was more vulnerable to injury. Pellicano further testified that he missed no work as result of the prior injury and was only placed on "light duty status" as a result of that injury. Pellicano's brother, Peter Pellicano, testified, stating that after the prior injury Pellicano was wearing a neck brace but getting better and that Pellicano, "did the normal things around the house, he did the shopping, mowed the lawn, whatever, played football with the guys, . . . . "

> The liability of one who negligently or unlawfully injures the person of another is not to be measured by the physical strength of the party injured or his capacity to endure suffering. One of weak physical structure, or small vitality, or in ill health, has as much right to protection from violence as a robust athlete, and in either case the physical injury, the bodily harm, which is actually caused by the violence, whether one be strong or weak, healthy or sick, is the natural consequences of the wrong. The defendant is responsible for all ill effects which naturally and necessarily follow the injury in the condition of health in which the plaintiff was at the time of the fall, and it is no defense that the injury might have been aggravated and rendered more difficult to cure by reason of plaintiff's state of health at that time, or that by reason of latent disease the injuries were rendered more serious to her than they would have been to a person in robust health. If the afflictions which plaintiff had before the fall

did not cause her pain and suffering, as she says they did not, but after the fall they did cause pain and suffering, the fall is the proximate cause of the injuries sustained. The defendant is not entitled to receive a reduction of the damages which plaintiff suffered on account of such infirmities. The foregoing statement of the rule is supported by a great preponderance of authority.

*Elrod v. Town of Franklin*, 204 S.W. 298, 301 (Tenn. 1918).

An often stated principle is that a tort feasor must accept the person as he finds him and the person injured by the tort feasor is entitled to recover all damages proximately caused by the acts of the tort feasor. A defendant is not "responsible for plaintiff's previous condition, except to the extent of aggravation or enhancement by defendants' acts." *Haws v. Bullock*, 592 S.W 2d. 588, 591 (Tenn. Ct. App. 1979). Thus, a plaintiff may recover for an increase in disability, but not for the total disability which resulted from the pre-existing condition plus aggravation of the pre-existing condition caused by the accident. *Kincaid v. Lyerla*, 680 S.W.2d 471, 473 (Tenn. Ct. App. 1984).

A concise statement of the law regarding the aggravation of a pre-existing condition is found in the Tennessee Pattern Jury Instructions.

A person who has a condition or disability at the time of an injury is entitled to recover damages only for any aggravation of the pre-existing condition. Recovery is allowed even if the pre-existing condition made plaintiff more likely to be injured and even if a normal, healthy person would not have suffered substantial injury.

A plaintiff with a pre-existing condition may recover damages only for any additional injury or harm resulting from the fault you may have found in this case. Damages shall include all the additional harm or disability even though it is greater because of the pre-existing condition [and even though the pre-existing condition caused no harm or disability before the occurrence].

T.P.I. 3-Civil 14.14.

It is undisputed that Pellicano had a pre-existing injury. Moreover, Defendant has conceded that the incident "exacerbated" Pellicano's pre-existing condition and that the medical expenses for conservative care by Dr. Guillermin from the date of the incident up to the date of the surgery, in the amount of $1,277.20, were reasonable and necessary. While Defendant does not contest this portion of the award for medical expenses, it vigorously contends that Pellicano failed to present competent evidence sufficient to establish that the surgery was necessitated by the exacerbation of the pre-existing injury, arguing that the evidence established that it is just as likely that Pellicano would have needed the surgery if the incident had not occurred.

The testimony of Dr. Guillermin is central to the issue of whether there is sufficient evidence to establish that the surgery was necessitated by the incident. Dr. Guillermin did not treat Pellicano

for the injury that occurred prior to the incident. Moreover, Dr. Guillermin did not see Pellicano before the incident and did not see nor treat him for any condition until May 4, 2002, some four months after the incident at issue. Dr. Guillermin initially treated Pellicano conservatively and then recommended a diskectomy. He performed the diskectomy on June 19, 2000. Dr. Guillermin testified by deposition. The following are pertinent parts of his testimony from the first of two depositions:

Q      Doctor, can you tell me some more about what caused this man's injuries? Can we say whether his herniated disc was caused by the work comp accident or by the auto accident?

A      The diagnostic imaging, which confirmed the diagnosis of a herniated disc, was done prior to the auto accident. So it doesn't make any difference what caused that. How it stands there, in relation to the auto accident, is of question. He had a ruptured disc before the auto accident, so the auto accident did not cause a ruptured disc; it exacerbated his symptoms.

Q      I'm sorry, what kind of test did you say showed that he had a ruptured disc before?

A      myelogram, followed by a CT scan.

Q      So the work comp accident actually caused the herniated disc?

A      Well, it hasn't been decided what caused the herniated disc. It makes no difference what caused the herniated disc, because whatever caused it, it was proved to be present on that day, and therefore anything that happens thereafter would exacerbate it.

Q      Okay. But the auto accident didn't actually cause the herniation?

A      That's correct. I mean he had a herniated disc before the auto accident.

Q      And is it possible he would have had to have a diskectomy regardless of whether he had the auto accident?

          Mr. Plummer: Object to the form of that. You may go ahead and answer.

<u>MS. BARKENBUS</u>: (CONTINUING)

          The Witness: Yes.

Q      Do you know whether he would have had to have a diskectomy regardless of the auto accident? I'm asking the same question a different way.

          Mr. Plummer: I object.

          The Witness: There are no statistics on that to base a statement. The answer is maybe yes; maybe no.

Dr. Guillermin was deposed a second time, several months later, in which the following exchange took place:

Q      In your last deposition you said that he might have needed a diskectomy even if he had never had the auto accident; is that correct?

. . . . .

BY MS. BARKENBUS:
Q     Do you recall saying that?
A     I believe that was the question and I said maybe, yes.
Q     Maybe, yes, that he might have needed the diskectomy, even if he had never had the auto accident?
A     I believe that was the answer to the question previously.
Q     Is that still your answer?
A     Exactly as it was in the previous deposition, yes.
Q     That he might have needed it anyway?
A     Correct.
Q     So you can't say with medical--a reasonable degree of medical certainty that the auto accident caused him to have the diskectomy, can you?
A     Repeat that question, please.
Q     Do we know that the--I'm sorry, let me start over. Do we know that the auto accident was the absolute reason that he needed to have the diskectomy?
A     It wasn't the absolute reason.
Q     Okay. And he may have needed to have one even if he hadn't had the auto accident; right?
A     Correct.

In most cases medical causation and permanency must be established by expert medical testimony. *Thomas v. Aetna Life & Cas. Co.* 812 S.W.2d 278, 283 (Tenn. 1991). If such testimony is speculative in nature, it is insufficient to establish causation. *Primm v. Wickes Lumber Co.*, 845 S.W.2d 768, 771 (Tenn. Ct. App. 1992). The foregoing reveals that Dr. Guillermin, in response to several similar questions pertaining to whether the incident brought about the need for surgery, offered the flexible opinion: "maybe yes; maybe no" or words to that effect. When called upon to consider what is and is not sufficient proof to establish causation, our Supreme Court stated:

"The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. . . . Prosser, Sec. 41, p. 269.
. . . . .

"A doctor's testimony that a certain thing is *possible* is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible, and it is thus improper to allow a jury to consider and base a verdict upon a 'possible' cause of death." *Palace Bar, Inc. v.*

*Fearnot,* 269 Ind. 405, 381 N.E.2d 858, 864 (1978). "The mere possibility of a causal relationship, without more, is insufficient to qualify as an admissible expert opinion." *Kirschner v. Broadhead,* 671 F.2d 1034, 1039 (7th Cir.1982).

. . . . .

Nevertheless, a mere possibility is not an affirmative basis for a finding of fact. "In the language of the law of evidence, [a medical opinion suggesting] that which is merely possible, standing alone and not offered as auxiliary or rebuttal testimony is immaterial to the ascertainment of the fact and so is inadmissible as evidence of that fact." *Martin v. United States,* 284 F.2d 217, 219 (D.C. Cir. 1960). *Kirschner v. Broadhead, supra,* 671 F.2d at p. 1039-1040.

*Lindsey v. Miami Development Corp.* 689 S.W.2d 856, 861-862 (Tenn.1985).

Dr. Guillermin's testimony pertaining to the important issue of whether the need for surgery was caused by the incident with the ambulance, "maybe yes; maybe no," is the epitome of being equivocal. Accordingly, we find that Dr. Guillermin's testimony, standing alone, is insufficient to establish that Defendant is liable for damages attributable to the surgery. However, an inference of causation may be drawn by the trial court where equivocal medical proof is combined with other evidence which supports a finding of causation. *Taylor v. Dyer*, 88 S.W.3d 924, 926 (Tenn. Ct. App. 2002) (quoting *Tindall v. Waring Park Assoc.*, 725 S.W.2d 935, 937 (Tenn. 1987)).[3] "Causation may be established by a combination of medical and lay testimony." *Id.* at 926. Thus, our next step is to analyze whether any other evidence presented by Pellicano is sufficient to show that the ambulance accident caused the need for surgery.

Pellicano and his brother, Peter, testified that he was injured prior to the ambulance accident, when a pipe fell on his neck and shoulder at work, but he did not miss any work because of the prior injury. Peter Pellicano testified that Pellicano had recovered from the on-the-job injury and was doing the shopping, mowing the yard and playing football "with the guys," but that after the incident he could not do work around the house, pick up heavy items when shopping or mow the lawn. He also testified that Pellicano was in great pain after the incident and was losing a great deal of sleep after the incident.

Pellicano testified that he was restricted to "light duty" work by his first doctor, that he only suffered from pain in his shoulder and that he was "fine" before the incident. He stated that he was wearing a neck brace on the day of the incident but was not wearing it when the incident occurred. Pellicano admitted that he told the driver of the ambulance and the other paramedic (Jones and Wilson) that he was not injured. He further admitted that he did not seek medical care for four

---

[3] The court in *Taylor v. Dyer* recognized that it was deriving this reasoning regarding causation and the use of lay testimony from worker's compensation cases but opined that the principles would also apply to an auto accident case as was involved in *Taylor*.

-8-

months after the incident, explaining that he did not seek medical care until he began suffering persistent numbness in his arms and fingers, pain, headaches and loss of sleep.

Pellicano testified that his injuries and surgery were the result of the incident with Defendant's ambulance; however, on cross examination the defense challenged the basis of his opinion as to causation.

BY MS. BARKENBUS:

Q        Okay.  Your worker's comp accident was about seven weeks before the ambulance accident; right?

A        I believe so, yes.

Q        And you had pain in your arm as a result of the worker's comp accident, didn't you?

A        Yes.

Q        And I think you testified that you had pain from your shoulder to your elbow as a result of that --

A        Yes.

Q        -- worker's comp accident?  And the pipe that fell on you was about 20 feet long, wasn't it?

A        Pretty close, yes.

Q        And it was about 100 pounds, wasn't it?

         THE COURT:  He had pain from his shoulder to his elbow?

         MS. BARKENBUS:    Yes, ma'am.

BY MS. BARKENBUS:

Q        That pipe was about 20 feet long that fell on you--

A        Right.

Q        --at your work comp accident?

A        Right.

Q        And that pipe weighed 100 pounds; right?

A        Maybe not that heavy, it was plastic.  You know, maybe pretty close.  I'm not sure, I don't know exact weights on every pipe.  I really don't know.

Q        Can I ask you to look at this?  That's the complaint that you filed in your worker's compensation lawsuit, isn't it?

A        I believe so, yes.

Q        And can you read Paragraph 5 for me?

A        Actually I can't, because I don't have my glasses on.  Could you read that for me?

. . . . .

Q        While unloading pipe at a job site, comma, the plaintiff was injured when a large piece of pipe approximately 12 inches by 20 feet and about 100 pounds fell and struck him on the back of the neck and right shoulder junction.  Would you argue if I said that's what it says?

A     No, that's what it says.

Q     And in that complaint you said that you had suffered pain and injury as a result of that accident; right?

A     Yes.

Q     And isn't it true that you also said that your surgery had been caused by that accident?

A     My surgery was caused by that accident?

Q     By your worker's compensation accident?

A     No, I don't believe so.

. . . . .

Q     It says, As a direct and approximate result of the accident the plaintiff had to undergo surgery and is still recovering at this time.

A     Hmm.

Q     That is the complaint that you filed in Davidson County Circuit Court, isn't it?

A     I believe so.

Q     For your worker's compensation accident?

A     Yes.

. . . . .

Q     Mr. Pellicano, as a result of this worker's compensation accident you were wearing a neck brace, weren't you?

A     Yes.

Q     And you wore that all the time when you worked; is that correct?

A     Yes.

Q     And in fact you were wearing that neck brace on the day that you had the ambulance accident; right?

A     Yes.  Well, no, I didn't have it on at the time.  I took it off to go home.

Q     But you had been wearing it that day?

A     Yes.

Q     And where did that neck brace go?

A     It's in my room right now.

Q     Where did it fit on your body?

A     Right around here [indicating].

Q     And after the ambulance accident you continued to wear that neck brace; is that correct?

A     I'm sorry?

Q     After the ambulance accident you continued to wear that neck brace; correct?

A     No, not--well, in a way, yes, I did; in another way, no, I did not.

Generally, a lay witness should testify about facts observed, not about the witness's opinions or inferences. Neil P. Cohen, *et al*., *Tennessee Law of Evidence*, § 7.01[4][a], (4th ed. 2000 & Supp. 2003). "Lay testimony is competent to establish such simple but important matters as existence of pain, its location, inability to work, etc. but it may not be received and relied upon to prove matters requiring scientific knowledge." *American Enka Corp. v. Sutton*, 391 S.W. 2d 643, 648 (Tenn. 1965). Causation should be established by medical experts in all but simple and routine cases– and even then expert testimony is highly desirable. *Id*. at 647 (citing 2 Larson, *Workmen's Compensation Law* (1961)).

An example of a "simple" injury that would allow testimony by a layperson as to causation is found in *Varner v. Perryman*, an auto accident case. In *Varner*, the court considered whether plaintiff's testimony, that he received a bruised stomach muscle as a result of the accident, was sufficient to establish causation. The court found that the existence of a bruise would be the kind of "simple" injury that would allow a layperson to testify as to causation. *Varner v. Perryman*, 969 S.W. 2d 410, 412 (Tenn. Ct. App. 1997) (citing *American Enka Corp. v. Sutton*, 391 S.W. 2d 643 (1965)). Our Supreme Court addressed the important differences between simple injuries, for which lay persons are permitted to opine, and more complex medical issues, for which only experts are permitted to opine, in *American Enka Corp. v. Sutton*, 391 S.W.2d 643, 646 - 648 (Tenn.1965).[4] The issue the court was dealing with in *Sutton* was whether the injured lay person could provide competent proof as to causation of a nerve injury to his eye which he claimed to have resulted from a chemical accident. The court stated:

> It must be remembered that we are dealing with delicate mechanisms of the eye, including the optic nerve and to make an award in this case based upon conclusions unsupported by scientific knowledge is not sufficient to meet the requirement that there shall be material evidence to support the award.
>
> Petitioner cites the case of *Fidelity & Cas. Co. of New York v. Treadwell*, 212 Tenn. 1, 367 S.W.2d 470 (1963), quoting a statement therein that: '* * * the testimony of an injured person as to the extent of his injuries may be believed in preference to the opinions of 'a whole college of physicians' testifying to the contrary.' 212 Tenn. at 9, 367 S.W.2d at 474.
>
> This may be true as to the extent of injuries, but it does not apply to causal connection between an accident and resultant injury. In the case *sub judice* there is no argument as to the extent of injury, but rather as to the causal connection.
> . . . . .

---

[4]*Sutton* is a workers' compensation case; nevertheless, the evidentiary issues presented are applicable to this action.

In the recent case of *Magnavox Company of Tenn. v. Shepherd*, 214 Tenn. 321, 379 S.W.2d 791 (1964), we reversed the action of the trial court in granting an increase to an award previously made because there was no competent proof of causal connection between the original injury and the alleged increased disability. In the *Shepherd* case the employee and her husband testified that her increased disability was due solely to her original injury. An expert medical doctor testified there was no causal connection between the original injury and the increased disability. We held therein and now reaffirm that:

> Lay testimony is competent to establish such simple but important matters as existence of pain, its location, inability to work, etc., but it may not be received and relied on to prove matters requiring scientific knowledge.

The only competent evidence based upon scientific knowledge offered in this case is against the award.

*American Enka Corp. v. Sutton*, 391 S.W.2d 643, 646 - 648 (Tenn.1965)**.**

The testimony of Pellicano and his brother is the only testimony, other than Dr. Guillermin's equivocal opinion, concerning whether Pellicano's need for surgery was caused by the incident with the ambulance. Pellicano and his brother are lay witnesses. It is well established that Tenn. R. Evid. 701 does not authorize lay testimony on subjects that require special skill or knowledge outside the realm of common experience. *Tennessee Law of Evidence* at § 7.01[4][b]. "In situations where a witness 'cannot readily and with equal accuracy and adequacy' testify without an opinion, the witness may state opinions requiring *no expertise*." Tenn. R. Evid. 701, Advisory Commission Comment. (emphasis added) While their lay testimony is competent to establish that Pellicano incurred pain following the incident and that he had pain and numbness in his arms weeks later, their lay testimony is insufficient to establish a cause in fact relationship between the incident and the need for a diskectomy.

Based upon the judgment, it is obvious that the court found Pellicano's testimony, along with that of his brother, sufficiently credible and competent to establish that Pellicano had essentially recovered from his prior injury, with the exception of some pain and discomfort, that all of his subsequent problems were the result of the exacerbation of the pre-existing injury and, therefore, the damages should be assessed against Defendant and not apportioned. Since Dr. Guillermin gave no opinion as to causation (maybe yes; maybe no), it is also obvious that the trial court found Pellicano's testimony, along with that of his brother, sufficiently credible and competent to establish that the incident was the cause in fact of the surgery and that all of Pellicano's medical expenses, pain and suffering and lost wages were attributable to the incident with the ambulance.

-12-

The evidence does not preponderate against the trial court's finding that the incident exacerbated the pre-existing injury; however, we respectfully disagree with the trial court's finding that the incident was the cause in fact of the need for surgery. The only basis upon which the trial court could have reached that conclusion would be the lay testimony of Pellicano and his brother.[5] In our opinion, the evidence preponderates against the trial court's finding of a cause in fact relationship between the incident and the need for surgery for a number of reasons. Pellicano failed to provide a convincing explanation why he attributed the need for surgery to the worker's compensation accident and thereafter to the incident with the ambulance in the absence of competent expert proof, which undermined his credibility. Moreover, the lay testimony as to causation is in conflict with *Taylor* for it, in essence, constituted an opinion that the surgery was necessitated by the incident. Pellicano and his brother's lay opinion testimony does not qualify for the "simple assessment of medical causation" exception in *Taylor*. Such opinion testimony requires scientific knowledge which Pellicano and his brother do not possess. Accordingly, we hold that the lay opinion testimony as to the cause in fact for the surgery was not competent and therefore was insufficient to cure the deficiencies of the equivocal medical proof offered by Dr. Guillermin.

Therefore we find that Pellicano provided sufficient competent proof to establish that the incident with Defendant's ambulance exacerbated his pre-existing neck injury to some degree; however, the evidence preponderates against the trial court's finding that the incident was the cause in fact of the need for surgery. Thus, the proof was insufficient to hold Defendant liable for all of the expense of the surgery and any damages attributable thereto.

Consequently, we reverse the trial court's holding that the incident with Defendant's ambulance was the cause in fact of Pellicano's need for surgery. Due to our finding that the incident was not proven to be the cause in fact for the surgery, we also vacate the trial court's award of damages for medical expenses, pain and suffering and lost wages attributable to the surgery. Nevertheless, in that Defendant conceded that Pellicano is entitled to recover his medical expenses for conservative care administered by Dr. Guillermin prior to the surgery in the amount of $1,277.20, we therefore modify and reduce the award for medical expenses to $1,277.20.[6]

In that the proof sufficiently established that the incident exacerbated the pre-existing neck injury, particularly the pain and suffering associated with the exacerbation of the neck injury, this matter is remanded to the trial court for determination of the plaintiff's claim for pain and suffering to the extent it was exacerbated by the incident.

---

[5]It could not be based upon the expert testimony of Dr. Guillermin for he did not give an opinion as to causation.

[6]Due to Defendant conceding that it is liable for $1,277.20 of Pellicano's medical expenses, we have not considered whether the causation evidence concerning these medical expenses is sufficient.

Therefore, this matter is remanded to the trial court for appropriate proceedings consistent with this opinion.

Costs are taxed to Appellee, Dominic P. Pellicano.

_____
FRANK G. CLEMENT, JR., JUDGE