**Gordon M. SEAY, Appellee,**

v.

**TOWN OF GREENEVILLE, Appellant.**

Supreme Court of Tennessee.

Oct. 1, 1979.

Thomas L. Kilday, Milligan, Coleman, Fletcher, Gaby & Kilday, Greeneville, for appellant.

William Clyde Russell, Greeneville, for appellee.

OPINION

COOPER, Justice.

In this workmen's compensation case the employer appeals from the chancellor's award of benefits to the employee. Appellant insists the chancellor erred in finding that the appellee suffered a 50% permanent partial disability to the body as a whole which was causally related to his employment injury. After reviewing the record, we are of the opinion that there is material medical evidence to support the chancellor's finding of causal relationship between appellee's last on-the-job injury and his disability, and the chancellor's decree is affirmed.

The employee, Gordon Seay, only has a fourth grade education and cannot read or write; consequently, he has always earned his living by doing heavy manual labor. He is accident-prone, both on and off the job, and has been injured on several occasions. Despite these injuries, he was able to work with reasonable regularity throughout the years of his employment by the maintenance department of the Town of Greeneville, doing whatever task was assigned to him.

On Saturday, March 25, 1977, appellee was assigned the task of "rolling" a ball field. In moving the 2,000 pound roller, appellee ran it onto a curbing, causing the roller to overturn. The roller did not fall on appellee but struck his back, hip, and left leg and "like to have jerked (his left shoulder) off" as he jumped from the roller. Appellee had severely injured his left shoulder in 1974 when the same roller had overturned.

Appellee and a fellow worker, who witnessed the accident, righted the roller. Appellee then went home for lunch. When the pain from his injuries did not subside but rather increased, appellee went to the office of Dr. Wayne M. Ottinger, a chiropractor, for treatment. Appellee gave notice of injury to his employer on the Monday following the accident. The employer's first report of injury was filed with the State of Tennessee on March 28, 1977.

Appellee testified that prior to his injury on March 25, 1977, he was able to do heavy manual labor. He laid blocks, set concrete tables that weighed about 400 pounds, and did other work of a similar nature that required him to be "in pretty good shape to lift and do the kind of work we did." He further testified that after his injury, he continued to work in an effort to keep his job. On a number of days when he would go home of an evening, he "would get down and couldn't get up. On a lot of mornings (he) would go in to work, and couldn't make it, and (he) would have to go home." During this time, appellee was treated by Dr. Ottinger, Dr. Sam Huddleston, and Dr. Harold Roberts. The latter two doctors advised appellee to do light work only. When it was not forthcoming, appellee left the employ of the Town of Greeneville, in October, 1977.

Dr. Ottinger testified that on appellee's first visit to him, which was approximately two hours after the accident with the roller, appellee was complaining of pain in the left shoulder, neck, low back, and the muscles of the right leg and that his complaints were consistent with objective findings. Dr. Ottinger "adjusted the subluxated vertebrae, the tight muscles in the involved area" on twelve occasions during a four week period, and was of the opinion that plaintiff had recovered from his injury.

Dr. Sam Huddleston, the orthopedic surgeon who operated on the shoulder injured by appellee in the 1974 "roller" accident and who permitted appellee to return to heavy labor, examined appellee on three occasions after his injury in 1977—April, 1977, September, 1977, and March, 1978. The latter two visits were for the purpose of evaluating appellee's complaints. On the initial visit which was for treatment, Dr. Huddleston did not take a medical history from appellee in the conventional form and, consequently, was not told of the accident of March 25, 1977. He was told that appellee was suffering "from pain in the low back, right sciatic and right ankle pain, and weakness of grip and other widespread symptoms."

Dr. Huddleston testified that "he didn't see any change basically in appellee's state in the last three or four years," and that he did not believe "it will change other than in the normal process of aging (and that) he will get worse as he gets older." Despite finding no change in appellee's basic physical condition, Dr. Huddleston testified that appellee was totally disabled from doing heavy manual labor, which was a different evaluation than he placed on appellee when he operated on his shoulder after the 1974 accident. Dr. Huddleston further testified that appellee could do light work "if our system were able to get him and a job together" and that he sent appellee "to vocational rehabilitation to see if they could train him to do something else, some lighter work." The record does not indicate what "retraining program" is available for a forty-seven year old workman, who can neither read nor write. But, in any event, because of the possibility of appellee doing light work, Dr. Huddleston testified that "a realistic evaluation (of appellee's disability) would be 50% of the body as a whole."

Dr. Harold Roberts testified appellee came to him in October, 1977, complaining of "right low back pain" which had gradually increased over the months since the accident in March, 1977. According to Dr. Roberts, appellee gave a history of "multiple accidents,"—none of which were of recent occurrence except the March, 1977, accident. On examination, Dr. Roberts found that appellee had muscle spasm in the right lumbar area of the spine, which he testified was due to "myofascitis of the right lumbar." This condition was treated with high frequency diathermy and intermittent trac-

tion, leaving appellee with a "minimum amount of residual discomfort."

Dr. Roberts filed a disability report in March, 1978, with the Social Security Administration in which he stated that appellee was 100% disabled from doing any manual labor. In explanation, Dr. Roberts testified:

A. He has too many joint disabilities. For instance, the disability section of the state wanted to know how much disability he had due to hip, ankle, shoulder and back injuries, and where you are going over everything from your neck to your low back, you are not going to do any manual labor. I don't think he has done any, as far as that goes, anything other than manual labor. All these accidents that he has had were while he was, most of them were while he was doing some kind of manual labor.

Dr. Roberts was unable to state with medical certainty the disability attributable to the back injury sustained by appellee in March, 1977, or that attributable to the injuries sustained by appellant in other accidents. He did indicate, however, that appellee's previous injuries were not the cause of appellee's back injury, nor the sole cause of appellee's present disability.

Q. Dr. Roberts, regarding this last question of Mr. Kilday, not having seen him back at these different times that you have mentioned, you couldn't say what his condition was at those times.

MR. KILDAY; Object to the leading.

A. No, I couldn't determine how much limitation of motion he had in his shoulders and hips and knees and ankles and one thing or another. That doesn't have any bearing on his present complaints, his low back symptoms.

Generally, medical causation and the permanency of an injury must be estab-

lished by expert medical testimony. *Floyd v. Tennessee Dickel Company*, 225 Tenn. 65, 463 S.W.2d 684 (1971). However, these issues are questions of fact and the findings of the chancellor on these issues are binding on this court on appeal if supported by any material evidence. *See Harris v. Kroger Co., Inc.*, 567 S.W.2d 161 (1978); *A. C. Lawrence Leather Co. v. Loveday*, 224 Tenn. 317, 455 S.W.2d 141 (1970). In our opinion the medical testimony in this case is sufficient to support the chancellor's finding of a causal relationship between the injury sustained by appellee on March 28, 1977, and his inability now to perform heavy manual labor. Dr. Ottinger found objective signs of a back injury within two hours of the accident. Dr. Roberts concluded that appellee's physical condition precludes him from ever performing manual labor, and that appellee's previous injuries have no bearing on his present low back symptoms, which are a part of the cause of appellee's inability to do heavy labor. This medical testimony is in line with and is buttressed by lay testimony relative to appellee's ability to work before the accident and his inability to do heavy labor, without extreme pain, after the accident.

Decree affirmed. Costs of the appeal will be paid by appellant, the Town of Greeneville, Tennessee.

BROCK, C. J., HENRY and HARBISON, JJ., and BROOKS McLEMORE, Special Justice, concur.